**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **TIFFANY DORN, DANIEL SULLEN, and JOSHUA RENFROE, individually and on behalf of all others similarly situated,** | ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) ) |
| **VIVINT, INC.,** | ) ) ) ) |
| **Defendant.** | ) |

**CASE NO.: 2:19-cv-258-MHT-SMD**

**CLASS ACTION**

**JURY TRIAL DEMANDED**

---

### SECOND AMENDED CLASS ACTION COMPLAINT

---

Come now the Plaintiffs, Tiffany Dorn, Daniel Sullen, and Joshua Renfroe, individually and on behalf of all others similarly situated, and bring this Second Amended Class Action Complaint against Vivint, Inc. (hereinafter "Vivint"), and allege the following:

### SUMMARY OF THE CASE

1.     Upon information and belief, Vivint and its employees and agents were engaged a scheme in order to increase their sales of new Vivint accounts for products and services.

2.     Vivint and its employees and agents have been actively engaged in door-to-door sales tactics for many years.

3.     Upon information and belief, when a salesperson for Vivint finds a prospective new customer, the salesperson must submit that prospective customer's information to Vivint in order to confirm that the customer is eligible to finance the equipment, which can cost many thousands of dollars.

4.      Upon information and belief, if that prospective Vivint customer does not qualify for financing, Vivint alerts the salesperson that the customer will need to have a co-signor on the Vivint contract.

5.      Upon information and belief, if the prospective customer has no available co-signor, rather than losing the sale, the Vivint salesperson will add a complete stranger's personal information to the contract and sign the stranger's name on it.

6.      Upon information and belief, the Vivint employee or agent then assigned to install the security system proceeds to install the equipment at the residence without verifying the identity of the person whose name is on the Vivint contract.

7.      Upon information and belief, once the new Vivint customer—who was not creditworthy enough for financing—predictably fails to make their payments, the fraudulent account in the stranger's name gets sent to collections, where it wreaks havoc on their personal life and financial wellbeing.

8.      The Plaintiffs and proposed Class Members in this lawsuit are the strangers whose identities were fraudulently added to new Vivint accounts.

9.      Upon information and belief, Vivint's policies and procedures consistently allow this scheme to happen, because Vivint only requires the salesperson to provide the name and date of birth of the stranger to add them to the accounts.

10.     This scheme and its consequences are an extremely foreseeable result of Vivint's lax policies relating to identify verification.

11.     In fact, Vivint's policies and procedures, such as commissions for salespersons and new-account-creation specialists, created an environment where this scheme could thrive.

12.     Vivint's clear failure to require identity verification when creating new accounts has caused—and will continue to cause—serious problems and real injuries for the Plaintiffs and proposed Class Members.

## **PARTIES**

13.     Plaintiff, Tiffany Dorn, is a resident of Montgomery County, Alabama, and is over the age of nineteen (19) years. At all times relevant hereto, she resided in Montgomery, Alabama, and claims damages as set forth below.

14.     Plaintiff, Daniel Sullen, is a resident of Macon County, Alabama, and is over the age of nineteen (19) years. At all times relevant hereto, he resided in Tuskegee, Alabama, and claims damages as set forth below.

15.     Plaintiff, Joshua Renfroe, is a resident of New York County, New York, and is over the age of nineteen (19) years. At all times relevant hereto, he resided in New York City, New York, and claims damages as set forth below.

16.     Defendant Vivint, Inc. is a corporation organized and existing under the laws of the state of Utah with its principal place of business in Provo, Utah. Vivint is engaged in the business of marketing, selling, distributing, installing, operating, and providing various services related to residential security systems, home automation systems, and other "smart home" products throughout the United States.   At all times relevant hereto, Vivint conducted business in Montgomery County, Alabama, and continues to do so.

17.     Upon information and belief, at all times herein mentioned, the employees of Vivint, its subsidiaries, affiliates, agents, and other related entities, as well as the employees of Vivint's subsidiaries, affiliates, agents, and other related entities, were the agents, servants and employees of Vivint, and at all relevant times, were acting within the purpose and scope of said

agency and employment. Whenever reference in this Complaint is made to any act or transaction of Vivint, such designations shall be deemed to mean that the principals, officers, employees, agents, and/or representatives of the Defendant committed, knew of, performed, authorized, ratified and/or directed such transactions on behalf of Vivint while actively engaged in the scope of their duties.

## JURISDICTION AND VENUE

18.    This court has original jurisdiction over this civil action under the Class Action Fairness Act of 2005. The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and there is minimal diversity because the named Plaintiffs and certain members of the Class are citizens of a different state than Defendant, as required by 28 USC §1332(d)(2).

19.    Venue in this judicial district is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district. Vivint conducts business in this judicial district, and its contacts here are sufficient to subject it to personal jurisdiction.

## FACTUAL ALLEGATIONS

**A.**    **Plaintiff Dorn**

20.    Ms. Dorn signed two agreements with Vivint for security products and services. Ms. Dorn signed the first agreement in October of 2015 for a residence located in Tuskegee, Alabama and signed the second agreement in September of 2016 for a residence located in Montgomery, Alabama. These agreements are still in effect.

21.    The aforementioned agreements are the only agreements or contracts that Ms. Dorn has ever signed or agreed to be a party to with Vivint.

22.     Ms. Dorn's claims and allegations in this lawsuit are entirely unrelated to the aforementioned agreements with Vivint and in no way arise from those agreements.

23.     In November of 2018, Ms. Dorn received an alert from a credit-monitoring service that a derogatory account had been submitted to the credit reporting agencies and had appeared on her credit reports. Upon investigation, Ms. Dorn learned that Vivint was the original creditor for this derogatory account, which showed a delinquent balance of $3,333.00 owed to Vivint.

24.     Upon information and belief, the derogatory account had been submitted to the credit reporting agencies on or before September 23, 2018.

25.     Due to the submission of this derogatory account, Ms. Dorn's credit score dropped substantially, which caused her severe mental and emotional distress.

26.     Shortly after learning of the derogatory account, Ms. Dorn spoke to representatives of Vivint, who confirmed that, in fact, her two Alabama accounts were fully paid.

27.     The Vivint representatives then informed Ms. Dorn that the derogatory account was actually for a contract for security products and services located at a home in Killeen, Texas.

28.     Ms. Dorn immediately informed Vivint that she has never lived in Texas or entered into any agreement for security products and services with Vivint in Texas.

29.     The representative of Vivint then emailed Ms. Dorn a copy of the contract for services located at the home in Killeen, Texas. This contract, in fact, included Ms. Dorn's name and a signature that purportedly belonged to Ms. Dorn. However, none of the contact information (phone number or email) belonged to Ms. Dorn.

30.     Ms. Dorn never knew of, consented to, or placed her signature on the Vivint contract for services at this home in Killeen, Texas.

31.     Ms. Dorn spent extensive amounts of time and effort trying to get the situation sorted out with Vivint so that the unauthorized and fraudulent derogatory account would be removed from her credit reports.

32.     Through her continued communications with Vivint, Ms. Dorn ultimately learned that Vivint discovered at least **seven (7) total contracts for security products and services at residences in Killeen, Texas in her name**.

33.     Vivint provided Ms. Dorn with copies of each of these unauthorized, fraudulent contracts for services.

34.     Upon information and belief, representatives, employees, affiliates, and/or agents of Vivint caused Ms. Dorn's name to be on all seven contracts for the residences in Killeen, Texas without her authorization and fraudulently forged her signature on each of them.

35.     The first unauthorized, fraudulent account that Ms. Dorn is aware of was opened February 8, 2017, and the latest was opened on December 8, 2017.

36.     Ms. Dorn could not have found out about these unauthorized, fraudulent accounts prior to the derogatory account showing up on her credit report in November of 2018 unless Vivint had notified her. Further, Ms. Dorn may never have found out that Vivint and its representatives, employees, affiliates, and/or agents had misused her personal information and forged her signature had those unauthorized, fraudulent accounts not become delinquent and sent to collections.

37.     On or around February 24, 2019—well after Ms. Dorn had alerted Vivint that each of the seven contracts in Texas were unauthorized and fraudulent—a second derogatory account was submitted on Ms. Dorn's credit reports for a delinquent balance relating to a different account and residence located in Killeen, Texas.

38.     This second derogatory account showed a delinquent balance of $4,783.00 and again listed Vivint as the original creditor.

39.     Ms. Dorn filed a police report with the Montgomery Police Department on March 7, 2019, related to these fraudulent accounts and the unauthorized use of her personal information.

40.     Ms. Dorn never received any notification or notices from Vivint that the unauthorized accounts existed or were delinquent before those accounts were submitted to the credit reporting agencies as derogatory.

41.     Thereafter, Vivint sent two more of the unauthorized accounts to collections companies, who attempted to collect the debts from Ms. Dorn. These accounts had delinquent balances of $3,431.85 and $3,578.54 and both originated for services provided at residences in Killeen, Texas.

42.     At one point, Vivint claimed Ms. Dorn owed over $15,000 for delinquent balances on accounts located in Texas, which were all unauthorized and fraudulent. In reality, Ms. Dorn owed nothing and was current on all payments for her two accounts in Alabama.

43.     Since November 2018, Ms. Dorn has spent an exorbitant amount of her time dealing with dozens of different representatives and agents of Vivint trying to get Vivint to remove her name and personal information from all of the unauthorized, fraudulent accounts and report those accounts as fraudulent to all of its collection companies. Ms. Dorn has kept notes and other documentation of her communications with Vivint.

44.     Ms. Dorn has repeatedly been ignored, mistreated, and disrespected by Vivint's representatives, employees, affiliates, and/or agents. Vivint has been evasive, condescending, and intentionally misleading in their communications with Ms. Dorn.

45.     Ms. Dorn's credit score, credit worthiness, and reputation have been negatively affected by the wrongful actions and inactions of Vivint, which has affected her livelihood and financial wellbeing.

46.     The wrongful actions and inactions of Vivint caused Ms. Dorn to undergo tremendous amounts of mental anguish, emotional distress, anxiety, and worry.

**B.      Plaintiff Sullen**

47.     In April of 2019, Mr. Sullen began receiving calls from a collections company claiming that he owed Vivint many thousands of dollars.

48.     Mr. Sullen has never received services or purchased products of any kind from Vivint.

49.     Mr. Sullen has never signed a contract for services of any kind with Vivint.

50.     Mr. Sullen informed the debt collectors that he had never heard of Vivint and certainly did not owe them any money.

51.     The debt collectors continued to call members of his family and threatened to show up at his place of employment to serve him with legal papers, which caused him significant emotional distress and mental anguish.

52.     Mr. Sullen was notified when applying for credit that his credit score was very low. Shortly thereafter, Mr. Sullen obtained his credit report from TransUnion and discovered three separate "adverse accounts" for which Vivint is identified as the original creditor.

53.     These adverse accounts on his credit report claimed that Mr. Sullen owed a total of $12,121.00 to Vivint.

54.     In reality, Mr. Sullen did not owe Vivint money since he has never done business with Vivint.

55.     Upon information and belief, there were at least **four (4) fraudulent Vivint accounts opened in Mr. Sullen's name with forged signatures.**

56.     Upon information and belief, representatives, employees, affiliates, and/or agents of Vivint caused Mr. Sullen's name to be included on each of these unauthorized contracts without his authorization and fraudulently forged his signature on each of them.

57.     Mr. Sullen has spent his time dealing with different representatives and agents of Vivint trying to get Vivint to remove his name and personal information from all of the unauthorized, fraudulent accounts and also report these accounts as fraudulent to all of its collection companies.

58.     Further, Mr. Sullen's credit report revealed that Vivint requested his consumer reports on three separate occasions: November 3, 2017, November 7, 2017, and November 9, 2017.

59.     Mr. Sullen's credit score, credit worthiness, and reputation have been negatively affected by the wrongful actions and inactions of Vivint, which has affected his livelihood and financial wellbeing.

60.     The wrongful actions and inactions of Vivint caused Mr. Sullen to undergo tremendous amounts of mental anguish, emotional distress, anxiety, and worry.

**C.      Plaintiff Renfroe**

61.     Mr. Renfroe has never received services or purchased products of any kind from Vivint.

62.     Mr. Renfroe has never signed a contract for services of any kind with Vivint.

63.     In February of 2019, Mr. Renfroe noticed that his credit score had dropped significantly, which caused him significant emotional distress and mental anguish.

64.     Shortly thereafter, Mr. Renfroe obtained a copy of his credit report from TransUnion and found two separate adverse accounts for which Vivint is identified as the original creditor.

65.     These adverse accounts on his credit report claimed that Mr. Renfroe owed a total of $7,984.00 to Vivint.

66.     In reality, Mr. Renfroe has never done business with Vivint and did not owe them any money.

67.     After spending time and other resources disputing the validity of these accounts with the collection company and then with Vivint, Vivint provided Mr. Renfroe with one of the contracts for services that he purportedly signed for a property located in Copperas Cove, Texas.

68.     This Vivint contract with Mr. Renfroe's name on it clearly contains a forged signature.

69.     Upon information and belief, there were at least **five (5) fraudulent Vivint accounts opened in Mr. Renfroe's name with forged signatures.**

70.     Mr. Renfroe has spent a considerable amount of time dealing with different representatives and agents of Vivint trying to get Vivint to remove his name and personal information from all of the unauthorized, fraudulent accounts and report those accounts as fraudulent to all of its collection companies.

71.     Upon information and belief, representatives, employees, affiliates, and/or agents of Vivint caused Mr. Renfroe's name to be included on each of these unauthorized contracts without his authorization and fraudulently forged his signature on each of them.

72.     Further, Mr. Renfroe's credit report revealed that Vivint requested his consumer reports on three separate occasions: November 3, 2017, November 7, 2017, and November 9, 2017.

73.     Mr. Renfroe's credit score, credit worthiness, and reputation have been negatively affected by the wrongful actions and inactions of Vivint, which has affected his livelihood and financial wellbeing.

74.     The wrongful actions and inactions of Vivint caused Mr. Renfroe to undergo tremendous amounts of mental anguish, emotional distress, anxiety, and worry.

**D.     Other Similar Complaints Against Vivint**

75.     A review of online complaints submitted to the Better Business Bureau reveals that Vivint's wrongful practices described above are widespread and not unique to the Plaintiffs.

76.     On May 31, 2017, a consumer complained: "I first found out a collection here on Credit Karma. The accountant question is that I can count that I never I've never opened. So I did a dispute on Credit Karma using the TransUnion dispute claim. I also called the collection company for details on this accounts in collection that I have no regards no connection to. It's been almost a month and perfect collection ahs not given me any type of proof stating that this is my account that it belongs to me with my signature or any type of documentation. So I looked up Vision [sic] security which is the company that I supposedly have an account in collections with and found out that this company is reviewed several times for scamming elderly people. My credit score was in the high 700s and as a result of this scam false reporting my score has dropped dramatically therefore and is ruining my chances of buying my first home."

77.     On August 17, 2017, a consumer complained: "Vivant [sic] is being reported on my credit report as an collection. The account states it was opened on 2/5/2016 and that I owe 1,417.00. I contacted Vivant [sic] who said they sold "my debt" to Perfection Collection. I asked Vivant [sic] to provide the social security that was associated to the account, the SSI they provided

was not mine. I did not reside at the location that these services were rendered and I have proof. . .”

78.     On April 19, 2018, a consumer complained: “I received a call that stated that I was the primary account holder for account #********** for something that I never signed for an address that I never lived at. I continuously receive calls for an account that I advised that is not my account nor have I ever lived at this address associated with this account and they still contact me stating I owe for this account. I can not believe that an account can be opened with no ID shown at all. I advised this company that this is a fraudulent account and still nothing has been done. It is hard to believe that this company is still in business.”

79.     On May 3, 2018 “I have a Vivant [sic] account that I was attempting to payoff and close because we are a military family and moving prior to there 7 year contract is over. . . While in contract with Vivint I discovered in an emergency situation that there was a fraudulent account in my name and have been trying to get it resolved for 6 month and have not gotten any response. The fraud and legal team can only be reached by email and the phone number they give you is a collection agency.”

80.     On May 15, 2018, a consumer complained: “. . .Perfection Collections states I had an account with Vivint Security Systems, that I had a 60 month contract that I still owed on. . . Perfection Collection added a bogus address to my credit report, where I have never lived, and the disputed bill from VIVINT that I have never heard or and never done business with.”

81.     On June 14, 2018, a consumer complained: “Perfection Collection has placed a collection on my credit report. This appears to be for a Vivint security system purchased in Louisiana. I have never lived in LA and have never purchased a security system. Never heard of Vivint. Called Perfection and was sent a sales contract signed by someone with the same name as

me. I have requested documentation showing my SS# or something linking me to this debt other than my name. I have never received a response. Have tried calling multiple times and always get a recording."

82.     On June 14, 2018, a different consumer complained: "I received a collection letter in February 2018 from the business attempting to collect a debt from Vivint. I also received phone calls from the business trying to collect the amount owed. I told them that my contract with Vivint was still current and I was still receiving service. They told me the account they were collecting on was not a current account but it was a past due account. The business provided me with account number *********, which does not match the account number on my signed contract with Vivint. I tried to call Vivint and they said account number ****** was taken care of and the only current account under my name was account *******. Vivint was supposed to contact Perfection Collection and have the collection account removed. I am still receiving phone calls for collections from this business attempting to collect on a debt that Vivint has confirmed does not belong to me. . . This contract they are collecting on is duplicate contract that never should have been assigned to collections. It never should have been given a different account number by Vivint in the first place. This business has told me that if Vivint sends them something confirming I do not owe the bill, they will take it off and stop collections."

83.     On July 16, 2018, a consumer complained: "This company reported a 4600 bill from Vivant [sic] on my Credit Report. I have never had an account with vivant [sic] which has been explained to this company. The address they have is in St. Louis. I have never lived in St. Louis, I have lived in Tulsa, OK all my life. . ."

84.     On July 30, 2018, a consumer complained: "In Feb. 2018, out of nowwhere, I received an alert of a new collection account on my report, I checked it and I immediately called

to try to get information on it because I did not recognize this. They tell me it's an account that was opened in Dec. 2015. I filed a dispute and they said the account belongs to me. It does not belong to me, I have never lived at that address. I requested a copy of the contract and it is not my signature. They told me the account is for an alarm company Vivant [sic], I have never dealt with Vivant [sic]. . ."

85.     On August 9, 2018, a consumer complained: "I have never signed a contract with this company or any affiliates of this company. I am closing on my house in a month and this company has put this on my credit report and I have never had service with them. I have never heard of this company or the company they are collecting for. . ."

86.     On October 8, 2018, a consumer complained: "Two months ago was alerted from my credit monitoring site that a collections was added to my credit report. I have never heard of this company before. I haven't received anything in the mail asking me to validate this matter in the mail, which is a direct violation of the FCRA. At the beginning of September 2018 via certified letter I requested formal validation of this debt and this request has not been answered. This collections dropped my score tremendously. Which is causing great stress in my life. The collection is for Vivint in the amount of $902. . ."

87.     On October 23, 2018, a consumer complained: "Company trying to collect a debt from vivant [sic] alarm systems. I have never had an account with vivant [sic] and they have never heard of me. I was told I had a week to arrange payment or it would go to court and I may get sued. They had my address as Louisiana for a home security system. I have never been to Louisiana. They have called me and extended family after talking to me. He said if I can prove it wasn't me they'd leave me alone."

14

88.     On February 4, 2019, a consumer complained: "I got a notice from credit karma that I had an account in collection from perfection collections. Original creator Vivint. I have never had a Vivint account. Vivent [sic] nor perfection collection has never been on my credit report as an inquiry or an account how does this just show Up for the first time in collections??? It dropped my credit score and this is not my debt. The other name on this joint "debt" is someone I have never lived with or opened any accounts with ever .. it is not possible for me to have a joint account. I have never signed a contract or given ANY personal info to vivint or perfection so how do they have my information????"

89.     On February 19, 2019, a consumer complained: "A fraudulent account with Vivint Smart Home 4931 North 300 West Provo UT was sent to Perfection Collection with a different address and a contract that I never signed. I only found out about it when my car ins was renewed with and increase in payment because the credit report was sent to my ins company. Meantime if it was my account how come I was never notified by phone or mail of this impending collection. My credit is excellent and this is ruining it, also a hardship for me Im a senior and on a fixed income. First I called Vivint and e-mailed them then I put a claim into the credit report company then I called Perfection and got a horrible woman on the phone screaming at me saying it will never come off of my credit report and Vivint will give me the run around and never do anything about it. Also I have an alarm system with Vivint already since April 2016 in good standing I wouldn't have 2."

90.     On March 14, 2019, a consumer complained: "A fraudulent account with Vivint was sent to Perfection Collection with a name that is not mine; a contract that I never signed. I was never notified by phone or mail of this Impeding collection. I disputed the account and the mailed

me a copy of contract with a signature and name that is not mine. I asked for proof of documents used to verify account and have not responded in 83 days."

91.     On April 15, 2019, a consumer complained: "Perfection Collection has reported an account (Vivint) to credit agencies under my name. I have a copy of the account in question and it clearly shows contract signed by someone else (Not me). I am not on this account and this account does not belong to me..."

92.     On April 18, 2019, a consumer complained: "This stems from an account with Vivint. I have not ever entered into a contract with them. . . There is an open police investigation into fraud. I have tried since I first found out about this, August 2018, to get this off my credit. I was assured that it was taken care of. But every month they are reporting to the credit bureau that I am delinquent. Many calls have done nothing.

93.     On April 23, 2019, a consumer complained: "I HAVE SENT SEVERAL LETTERS TO THIS COMPANY I GET BACK RETURN TO SENDER THIS IS NOT MY BILL ITS FOR A COMPANY CALLED VIVINT FROM 2015--FOR A TOTAL OF $4,137.00 WITH A MAN I HAVE NEVER MET AND MY IDENITY WAS ALSO STOLED DURING THAT TIME ITS ON FILE... I CAN NOT GET EITHER COMPANY TO EMAIL,WRITE OR CALL ME BACK I HAVE NEVER ORDERED ANYTHING FROM THIS DAMN COMPANY AND PERFECTION COLLECTIONS NEEDS SHUT DOWN FOR LEAVING THIS ON MY DAMN CREDIT REPORT IS IT MY SOCIAL SECURITY NUMBER FROM THIS COMPANY DID THEY STEAL MY IDENITY WHO IS THE MAN ON THERE WITH ME"

94.     On April 26, 2019, a consumer complained: ". . . In 2018, I received my first collection alert on my credit report about a Vivint account that was made on my name by an address in another city that I have never lived in or am familiar with causing my near perfect credit to

plummet under 700. I did not physically or personally authorize for Vivint to run my credit. . . My address (for the past 30 years) and the address on record are two totally different accounts. . ."

95.     On May 8, 2019, a consumer complained: "I do not owe this debt and this is not my account nor did I sign any contract for this account or authorize anyone to sign on my behalf. Perfection Collection sent me a letter in the mail regarding this account in January 2019 attempting to collect this debt. I had never heard of Vivint prior to this letter nor had contact with the company. The account is a joint account and none of my personal information is listed on the contract where it should be and the signature is not mine and also misspells my name! I have written to Vivint and Perfection Collection and asked that my name be removed from the contract and the account deleted from my credit report with all credit bureaus. Vivint responded that they had researched the issue and that my name would be removed from the account along with any initial credit inquiries and collections would stop. . . As of now the account is still on my credit report and I am still receiving calls from Perfection Collection attempting to collect this debt from me."

96.     On May 9, 2019, a consumer complained: "I recently received a letter from Perfection Collection stating that I owe Vivint $3866 and that this was reported on my credit report (which it is). I have never had Vivint services in my current home or any other locations that I've lived, nor had I been told that I owed any money before by either company. . . I contacted Perfection Collection and was assured that this could be resolved and removed from the credit report by paying the amount (why would I ever pay this amount for something I've never used, under a name I don't know????) or by filing a fraud case with the police. I filed a case that night. Clearly, both Vivint and Perfection Collection are operating under fraudulent practices since they do nothing to confirm the correct address of the person they are billing. Hope this is resolved by ASAP!"

97.     On May 16, 2019, a consumer complained: "This stems from an account with Vivant [sic].  I have not ever entered into an account with them.  This was sent to collections because a former tenant bought a security system and my name was on the contract.  There is an open police investigation into fraud. I have tried since I first found out about this, August 2018, to get this off my credit.  I was assured that it was taken care of.  But every month they are reporting to the credit bureau that I am delinquent.  Many calls have done nothing I give them my ssn and my first and last name and they couldn't find it and she ask why I'm upset I have a right to be upset 4,417 bill that I never had then she say I'm a co sign and still couldn't find the info."

98.     On May 21, 2019, a consumer complained: "I was review my credit report and noticed a collection I have never seen or had even heard of this company before I looked at my credit report. I did some more research and got the contact information. I had contacted Vivant and it took me about 2 day before I had gotten to the right person that could help me. I explained the situation, that I had never done business with the I signed no contracts and the address where they said served were rendered I have never stayed.  They told me it was an joint account and I have never heard of that person as well. I thought maybe someone else had gotten a hold of my information but the BBB website has several complaints with the same story.  At the end Vivant informed me my name and info was taken off of the account but that is not true because the debt it now at Perfection Collection. They also informed me that they never had my social security number but it is on my credit report so I was lied to a second time"

99.     On May 22, 2019, a consumer complained: "I would like to file a fraud complaint. In checking my credit report, there was an account made in 2016 that I did not begin. It is now in collections and shown as a negative mark on my credit report. Attached is documents found once searching for company which is incorrect personal information.  Can you please remove this

information as swiftly as possible.  Can you please send a letter to myself and the three credit card bureaus that this is fraudulent information on my credit report."

100.    On May 24, 2019, a consumer complained: "I received two phone calls in 2019 from someone stating they were coming to my old house and my work to collect debt.  I found this odd as I pay all my bills. I returned the call to discover that someone had opened a home security account with Vivant with me as the co-signer after the house had been sold in 2016. I moved to another state.  The gentlemen I spoke to on the phone at perfection collection said that he would take this information down stating that I no longer owned the house and report it as fraudulent activity.  That brings us to May 2019.  The charges now hit my credit report. I called Vivant and Perfection Collection to try and figure out what was happening.  Perfection Collection was not able to pull up any information on my and my debt.  I had given them, name, address, phone number, SS#, bday).  Very odd since they are wanting money from me, but can't find the debt? Shady. I then called vivant and I was able to obtain the name of the woman who opened the account as well."

101.    On July 10, 2019, a consumer complained: "I never had an account with Vivant [sic] and received notice yesterday via my credit report that my account went to Perfection Collection for $4088."

102.    On August 2, 2019, a consumer complained: "Vivant [sic] Inc. has sent derogatory information to the three major credit bureaus. Trans Union, Experian, and Equifax via Perfection Collection, for an account that I never had with Vivant. The information was sent to the credit bureaus in March 2019 and April 2019. I have never received services from Vivant Smart Home nor have I ever entered into an agreement with Vivant for services. I have disputed the Inaccurate

information and it remains on my credit reports. I am requesting that Vivant, Inc. have the derogatory information removed from my credit reports and provide me with proof of such."

103.    Plaintiffs are in possession of the name, address, email, and phone number for each of the twenty-seven persons who submitted the aforementioned Better Business Bureau complaints.

104.    It is apparent from the numerous consumer complaints that Vivint has been engaged in a long-running pattern and practice of opening customer accounts utilizing names of individuals that are not homeowners or residents at these properties without their authorization that has harmed the Plaintiffs and others like them.

105.    Vivint boasts on its website to its investors and the general public that it added 328,992 new subscribers between January 1, 2017, and March 31, 2018. The question now is how many of those new subscribers actually signed legitimate contracts for service with Vivint.

### CLASS ACTION ALLEGATIONS

106.    This action is also brought as a Class Action under Fed. R. Civ. P. 23. Plaintiffs propose the following Class, defined as follows, subject to modification by the Court as required:

**All persons in the United States for whom a Vivint account was created without that person's authorization.**

107.    Plaintiffs reserve the right to modify or amend the definition of the Class before the Court determines whether certification is appropriate.

108.    Plaintiffs fall within the Class definition and are members of the Class. Excluded from the Class is Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, Plaintiffs' attorneys and their employees, and the Judge to whom this action is assigned and any member of the Judge's staff and immediate family.

109.    **Numerosity/Impracticability of Joinder:** Upon information and belief, the members of the Class are so numerous that joinder of all members would be impractical. The precise numbers of members can be ascertained through discovery, which will include the sales, accounting, and other records of Vivint and its agents. The identity of each member is within the knowledge of Vivint and its agents and can be readily ascertained from records in the possession or control of Vivint and its agents.

110.    **Commonality and Predominance:** There are common questions of law and fact that predominate over any questions affecting only individual members of the Class.

111.    For Plaintiffs and the Class, the common legal and factual questions include, but are not limited to the following:

(a)    Whether Vivint has a duty to act reasonably and properly towards the Plaintiffs and members of the Class to avoid using their personal information without knowledge or consent;

(b)    Whether Vivint has a duty to act reasonably and properly towards the Plaintiffs and members of the Class to avoid forging their signatures (or allowing their signatures to be forged) on fraudulent contracts for service with Vivint;

(c)    Whether Vivint and its agents used the name and personal information of the Plaintiffs and members of the Class without authorization to open accounts for services with Vivint;

(d)    Whether Vivint allowed employees, representatives, affiliates, or agents to use the name and personal information of the Plaintiffs and members of the Class without authorization to open accounts for services with Vivint;

(e)     Whether Vivint allowed employees, representatives, affiliates, or agents to forge the signatures of the Plaintiffs and members of the Class on unauthorized contracts for service with Vivint;

(f)     Whether Vivint knew or should have known that these unlawful, unfair, deceptive, and unconscionable practices were taking place;

(g)     Whether Vivint failed to implement precautions or safeguards that would prevent employees, representatives, affiliates, or agents from adding the name and personal information of the Plaintiffs and members of the Class to Vivint contracts without authorization;

(h)     Whether Vivint failed to implement precautions or safeguards that would prevent employees, representatives, affiliates, or agents from forging the signatures of the Plaintiffs and the Class;

(i)     Whether Vivint failed to adequately hire, train, and supervise employees, representatives, affiliates, or agents in a manner that would prevent employees, representatives, affiliates, or agents from accessing or using the name and personal information of the Plaintiffs and members of the Class without authorization and/or from forging the signatures of the Plaintiffs and members of the Class;

(j)     Whether Vivint failed to implement precautions or safeguards to verify the identity of person(s) included on new customer contracts, including the Plaintiffs and members of the Class;

(k)     Whether Vivint's business practices, policies, and procedures encouraged Vivint employees, representatives, affiliates, or agents to use the name and

personal information of the Plaintiffs and members of the Class without authorization to open accounts for services with Vivint and forge their signatures;

(l)     Whether Vivint had a duty to notify the Plaintiffs and members of the Class that their personal information was misused;

(m)    Whether Vivint failed to notify the Plaintiffs and members of the Class that their personal information was misused;

(n)     Whether Vivint obtained consumer reports on the Plaintiffs and members of the Class without a permissible purpose related to unauthorized Vivint accounts in violation of FCRA.

(o)     Whether Vivint is liable for damages to the Plaintiffs and members of the Class and, if so, to what extent; and

(p)     Whether Vivint should be enjoined from engaging in such conduct in the future.

112.    **Typicality:** The Plaintiffs' claims are typical of the claims of the members of the Class. The Plaintiffs and all the members of the Class have been injured by the same wrongful practices of Vivint and its agents. The Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

113.    **Adequacy:** Each of the Plaintiffs is representative of the Class and will fully and adequately assert and protect the interests of the Class and has retained class counsel who are experienced and qualified in prosecuting class actions. Neither Plaintiffs nor their attorneys have any interests contrary to or in conflict with the Class.

114. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. In fact, a class action is likely the only available method for many of the Class members to receive adjudication of their claims, due to the hidden nature of Vivint's misconducts: the Class members will only find out that they have these claims against Vivint if 1) the unauthorized contract(s) for service in their name becomes delinquent and is sent to collections (as was the case with the Plaintiffs) or 2) Vivint identifies each fraudulent account and notifies the victims. Upon information and belief, Vivint has not notified any Class member of the misconduct alleged herein. Thus, a class action is not only superior to individual litigation, but necessary to enjoin Vivint to identify and notify Class members of these claims.

115. While the aggregate damages sustained by the Class are likely to be substantial, the individual damages incurred by each Class member may be too small to warrant the expense of individual suits. The likelihood of individual Class members prosecuting their own separate claims is remote or impossible, as previously discussed. Even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Further, individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also result in varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and the court system because of multiple trials of the same factual and legal issues. The Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Vivint has acted or refused to act on grounds

generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regards to the members of the Class as a whole is appropriate.

116.    Vivint and its agents have access to address and/or other contact information for the members of the Class, which may be used for the purpose of providing notice of the pendency of this action.

### COUNT I
### NEGLIGENCE/WANTONNESS/WILLFULNESS

117.    Plaintiffs re-adopt and re-allege each and every paragraph set forth above as if fully set forth here.

118.    Vivint had and continues to have a duty to act reasonably and properly towards the Plaintiffs and the Class to avoid using their personal information to open Vivint accounts without authorization.

119.    Vivint had and continues to have a duty to act reasonably and properly towards the Plaintiffs and the Class to avoid forging their signatures (or allowing their signatures to be forged) on fraudulent contracts for services with Vivint.

120.    Vivint had and continues to have a duty to act reasonably and properly towards the Plaintiffs and the Class to verify the identity of the person(s) included on new Vivint contracts for services.

121.    Vivint breached its duties to the Plaintiffs and the Class by:

(a)    Using the name and personal information of the Plaintiffs and members of the Class without their knowledge and consent to open accounts for service with Vivint;

(b)      Allowing employees, representatives, affiliates, or agents to use the name and personal information of the Plaintiffs and members of the Class without authorization to open accounts for service with Vivint;

(c)      Forging the signatures of the Plaintiffs and members of the Class on unauthorized contracts for service with Vivint;

(d)      Allowing employees, representatives, affiliates, or agents to forge the signatures of the Plaintiffs and members of the Class on unauthorized contracts for service with Vivint;

(e)      Only requiring Vivint salespersons or third-party sales agents to provide the name and date of birth of a person to add that person as a customer or co-signor to a new Vivint account for services.

(f)      Failing to implement precautions or safeguards that would prevent employees, representatives, affiliates, or agents from using the name and personal information of the Plaintiffs and members of the Class without authorization and/or from forging the signatures of the Plaintiffs and members of the Class;

(g)      Failing to adequately hire, train, and supervise employees, representatives, affiliates, or agents in a manner that would prevent employees, representatives, affiliates, or agents from using the name and personal information of the Plaintiffs and members of the Class without their authorization and/or from forging the signatures of the Plaintiffs and members of the Class;

(h)     Failing to implement precautions or safeguards to verify the identity of person(s) included on new Vivint contracts, including the Plaintiffs and members of the Class; and

(i)     Failing to immediately notify the Plaintiffs and members of the Class that their personal information has been misused.

122.   Vivint knew or should have known that the actions and inactions alleged in this Complaint would likely result in substantial harm to the Plaintiffs and members of the Class.

123.   The employees, representatives, affiliates, and agents of Vivint who used the personal information of the Plaintiffs and members of the Class to create unauthorized Vivint accounts and forged the signatures of the Plaintiffs and members of the Class were at all times acting within the purpose and scope of their duties to Vivint.

124.   The wrongful actions and omissions of the employees, representatives, affiliates, and agents of Vivint who used the personal information of the Plaintiffs and members of the Class to create unauthorized Vivint accounts and forged the signatures of the Plaintiffs and the Class were committed with the intent to benefit Vivint and did, in fact, benefit Vivint.

125.   Because of the negligent, wanton, and/or willful actions and omissions by Vivint, the Plaintiffs and the Class were caused to suffer injury, damages and harm, including, but not limited to:

(a)     Harm or increased risk of harm to credit worthiness, financial wellbeing, and reputation;

(b)     Emotional distress, mental anguish, humiliation, stress, and worry;

(c)     Forcing the Plaintiffs and members of the Class to spend time and other resources investigating and correcting the inaccuracies on their credit reports;

27

(d)     Forcing the Plaintiffs and members of the Class to spend time and other resources defending themselves from collection agencies and/or credit reporting agencies; and

(e)     Any other damages that are, because of nature of the Defendant's actions and/or omissions, unknown because they are not ascertainable at this time but that may become ascertainable and then known.

## COUNT II
## VIOLATIONS OF FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681, *et seq*.

126.    Plaintiffs re-adopt and re-allege each and every paragraph set forth above as if fully set forth here.

127.    Upon information and belief, Vivint's policy is to obtain and review a "consumer report" from the credit reporting agencies each time a Vivint account becomes delinquent in order to attempt to collect the debt.

128.    Vivint is required by 15 U.S.C. §§ 1681b, 1681n, and 1681o to refrain from obtaining or using consumer reports from credit reporting agencies under false pretenses and without proper authorization from the consumer who is the subject of the report.

129.    Obtaining and using consumer reports in the process of attempting to collect debts on accounts that Vivint knew or should have known were fraudulent accounts is not allowed pursuant to FCRA, and thus is a violation of federal law.

130.    Vivint has a mandatory duty to use or obtain consumer reports only for permissible purposes. 15 U.S.C. § 1681b(f).

131.    Upon information and belief, Vivint regularly obtained and reviewed consumer reports regarding the Plaintiffs and members of the Class without their knowledge or consent in order to attempt to collect debts on unauthorized accounts in violation of FCRA.

132.    Pursuant to 15 U.S.C. §§ 1681(n) and 1681(o), Vivint is liable for negligently and willfully violating FCRA by accessing the consumer reports of the Plaintiffs and Class members without a permissible purpose or authorization under FCRA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request the following relief:

A.    An Order certifying this case as a class action;

B.    An Order appointing Plaintiffs as the class representatives;

C.    An Order appointing the undersigned counsel as class counsel;

D.    A mandatory injunction directing Vivint to audit its records and systems to identity and notify Class members of any unauthorized Vivint accounts that have been created with their names or other personal information and to cease all debt collection efforts related to those accounts;

E.    A mandatory injunction directing Vivint to implement policies and procedures to prohibit its employees, representatives, affiliates, and agents from using Class members names and personal information to open accounts without authorization;

F.    An award of actual damages;

G.    An award of statutory damages, as provided for under applicable law;

H.    An award of punitive and exemplary damages;

I.    Pre-judgment interest at the maximum rate permitted by law;

J.    An award of attorneys' fees and costs; and

K.    Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs herein demand a trial by jury on all issues.

Dated: September 25, 2019                    Respectfully submitted,

                                             */s/ Jon Mann*
                                             Jonathan S. Mann
                                             Austin Whitten
                                             Michael C. Bradley
                                             **PITTMAN, DUTTON & HELLUMS, P.C.**
                                             2001 Park Place North, Suite 1100
                                             Birmingham, AL 35203
                                             Tel:    (205) 322-8880
                                             Fax:    (205) 328-2711
                                             Email:  jonm@pittmandutton.com
                                                     austinw@pittmandutton.com
                                                     mikeb@pittmandutton.com

                                             *Attorneys for Plaintiffs and the proposed Class*